# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROBERT FLANERY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1062-KHV |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Robert Flanery appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434. For reasons stated below, the Court reverses the Commissioner's decision and remands for further proceedings.

## Factual and Procedural Background

On July 20, 2015, plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning June 10, 2013. Transcript of Admin. Rec. ("Tr.") (Doc. #10) filed July 15, 2019 at 24. According to plaintiff, he experienced significant pain in his neck and back, which caused a number of other symptoms, including migraine headaches and weakness in other areas of the body. Id. at 30-31. The Commissioner denied plaintiff's claims on January 14, 2016, and again on March 11, 2016 upon reconsideration. Id. at 24.

On May 4, 2016, plaintiff filed a written request for hearing. Id. On September 13, 2017, plaintiff appeared with his attorney and a vocational expert at a hearing before Administrative Law

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for former Commissioner Nancy A. Berryhill as defendant in this suit.

Judge Michael D. Shilling.  Id.  Plaintiff testified that, among other symptoms, he suffered from severe neck pain.  Id. at 273.  This neck pain caused migraines two times a week and a pain that radiated down his right shoulder, through his arm and elbow and down into his fingertips.  Id. at 275.  Plaintiff reported that this affected his ability to grip, and that sitting at a desk or table and reading worsened the pain.  Id. at 276-277.  In addition to his testimony, plaintiff provided medical evidence of neck abnormalities that were causing the pain.  This evidence included a cervical spine MRI from July 7, 2017 that showed severe facet osteoarthritis and stenosis between C3 and C5, and a CT scan from August 8, 2017 that revealed severe hypertrophic changes and narrowing at C3-4 and moderate facet degeneration and foramina compromise at C4-5.  Id. at 849, 991.

On February 27, 2018, the ALJ decided that plaintiff was not disabled within the meaning of the SSA.  Id. at 24-36.  Specifically, the ALJ found that plaintiff's residual functional capacity ("RFC") included (1) performing sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967(a), (2) lifting and carrying 20 pounds occasionally and 10 pounds frequently, (3) walking or standing two hours out of an eight hour work day (plaintiff must sit six hours out of an eight hour work day), (4) occasionally climbing stairs, but never climbing ropes, scaffolds or ladders, (5) occasionally stooping, crouching, kneeling or crawling, (6) occasionally reaching overhead with his right upper extremity, (7) avoiding unprotected heights and hazardous moving machinery and (8) "[s]econdary to reported chronic pain, and potential side effects of medications, [plaintiff] is limited to simple work."  Id. at 36.  Using this RFC, the ALJ found that plaintiff could not perform his prior work, but could perform other work in the economy, and therefore was not disabled under the SSA.  Id.

The Appeals Council denied plaintiff's request for review. Id. at 1-6. Therefore, the ALJ decision stands as the final decision of the Commissioner. Plaintiff appealed the decision to this Court.

## **Standard of Review**

Under 42 U.S.C. § 405(g), the Court determines whether substantial evidence supports the Commissioner's decision. See Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Under the substantial evidence standard, the Court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. Id. at 1154. As the Supreme Court recently explained, this "threshold for such evidentiary sufficiency is not high." Id. Substantial evidence is "more than a mere scintilla," which means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## **Analysis**

Plaintiff asserts that substantial evidence does not support the ALJ decision that he is not disabled. Under the SSA, plaintiff is disabled if he has a severe physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. See 42 U.S.C. § 423(d)(1)(A). To determine whether plaintiff satisfies this standard, the Commissioner uses a five-step sequential process. 20 C.F.R § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010). In the first three steps, the Commissioner determines whether (1) plaintiff has engaged in substantial gainful activity since the alleged onset, (2) plaintiff has a severe impairment or combination of impairments and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(i)-(iii); see Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988). If plaintiff satisfies all three steps, he is disabled under the SSA.

If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four. At step four, the Commissioner determines whether plaintiff's impairments prevent him from doing work that he performed in the past. 20 C.F.R. § 404.1520(f). To make this determination, the Commissioner must make specific factual findings regarding plaintiff's abilities, including his RFC.[2] See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). An RFC consists of those activities that plaintiff can still perform on a regular and continuing basis despite physical limitations. Stewart v. Colvin, No. 14-1027-EFM, 2014 WL 5410240, at *6 (D. Kan. Oct. 22, 2014). If plaintiff satisfies step four by showing that he is incapable of performing past relevant work, the Commissioner proceeds to step five. Under this final step, the Commissioner again uses plaintiff's RFC, along with other factors such as age, education and work experience, to determine whether plaintiff can perform other work in the economy. Williams, 844 F.2d at 751. If plaintiff is able to do so, he is not disabled under the SSA.

Here, the ALJ determined under step five that plaintiff was not disabled under the SSA because he could perform other work in the economy. To make this determination, the ALJ considered, among other factors, plaintiff's RFC. As explained above, the ALJ found that plaintiff's RFC included (1) performing sedentary work as defined in 20 § CFR 404.1567(a) and § 416.967(a), (2) lifting and carrying 20 pounds occasionally and 10 pounds frequently, (3)

---

[2] Under step four, the Commissioner must make specific factual findings regarding plaintiff's ability in three phases. First, the Commissioner determines plaintiff's RFC. Winfrey, 92 F.3d at 1023. Second, the Commissioner determines the physical and mental demands of plaintiff's past relevant work. Id. Third, the Commissioner determines whether despite the mental and/or physical limitations found in phase one, plaintiff is capable of meeting the job demands found in phase two. Id.; Henrie v. U.S. Dep't of HHS, 13 F.3d 359, 361 (10th Cir. 1993).

walking or standing two hours out of an eight hour work day (plaintiff must sit six hours out of an eight hour work day), (4) occasionally climbing stairs, but never climbing ropes, scaffolds or ladders, (5) occasionally stooping, crouching, kneeling or crawling, (6) occasionally reaching overhead with his right upper extremity, (7) avoiding unprotected heights and hazardous moving machinery and (8) "[s]econdary to reported chronic pain, and potential side effects of medications, [plaintiff] is limited to simple work." Tr. 36.

Plaintiff asserts that substantial evidence does not support the ALJ decision because the ALJ erred in calculating his RFC. Specifically, plaintiff argues that the putative RFC directly conflicts with evidence that he could not sustain even sedentary work for five days and 40 hours a week. According to plaintiff, the primary reason for his disability is his neck pain, which the ALJ did not adequately consider because (1) the ALJ did not apply the proper framework to evaluate allegations of pain and (2) even if the ALJ had applied the proper framework, substantial evidence does not support his decision.

## I. Framework For Evaluating Plaintiff's Symptoms

Plaintiff asserts that in calculating his RFC, the ALJ did not apply the proper framework to evaluate his allegations of neck pain. When determining plaintiff's RFC, an ALJ must base his decision "on the entire case record, including the objective medical findings and the credibility of [plaintiff's] subjective complaints." Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009). Accordingly, the ALJ will consider plaintiff's statements about symptoms such as pain, and "any description [his] medical sources or nonmedical sources may provide about how the symptoms affect [his] activities of daily living and [his] ability to work." 20 C.F.R. § 404.1529(a). When evaluating plaintiff's claims of disabling pain, the Tenth Circuit has made clear that an ALJ must apply the three-part test from Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). Brownrigg v.

Berryhill, 688 F. App'x 542, 545 (10th Cir. 2017). Under this framework, the ALJ must determine (1) whether plaintiff established a pain-producing impairment by objective medical evidence, (2) if so, whether the impairment is reasonably expected to produce some pain of the sort plaintiff alleges and (3) if so, considering all the evidence, both objective and subjective, whether plaintiff's pain was in fact disabling. Id. In applying this framework, the ALJ should consider a non-exhaustive list of factors which include the level and effectiveness of medication, attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility within the judgment of the ALJ, the motivation of and relationship between plaintiff and other witnesses and "the consistency or compatibility of nonmedical testimony with objective medical evidence." Kellams v. Berryhill, 696 F. App'x 909, 913 (10th Cir. 2017); see 20 C.F.R. § 404.1529(c)(3)(i-vii). While the ALJ need not apply this framework formalistically, "the substance must be there." Brownrigg, 688 F. App'x at 545.

Here, although the ALJ decision did not explicitly mention Luna's three-part framework, it did apply it in substance. Describing the applicable test for evaluating plaintiff's symptoms, the ALJ explained that he must first determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [plaintiff's] pain or other symptoms." Tr. 30. Once plaintiff has shown such an impairment, the ALJ must then "evaluate the intensity, persistence, and limiting effects of [plaintiff's] symptoms to determine the extent to which they limit [plaintiff's] functional limitations." Id. When objective medical evidence does not substantiate plaintiff's statements about these symptoms, the ALJ "must consider other evidence in the record to determine if [plaintiff's] symptoms limit the ability to do work-related activities." Id.

Applying this test, the ALJ found that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. Thus, in substance, the ALJ found that plaintiff satisfied the first two prongs of Luna, but failed the third. Accordingly, the ALJ applied the proper framework in evaluating plaintiff's allegations of pain. See Singleton v. Colvin, No. 13-4079-JWL, 2014 WL 5149184, at *7 (D. Kan. Oct. 14, 2014) (finding nearly identical ALJ framework consistent with Luna).

## II.    Substantial Evidence

Although the ALJ applied the proper framework, the question remains whether substantial evidence supports his finding. Here, plaintiff's challenge centers on his allegations of severe pain stemming from neck abnormalities. Specifically, plaintiff argues that his evidence of pain establishes a disability in accordance with the third prong of Luna, and that substantial evidence does not support the ALJ decision to the contrary.

Due to an ALJ's "institutional advantage" in evaluating the credibility of plaintiff's subjective complaints, the Court applies a "particular deference" to these findings. White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001), as amended on denial of reh'g (Apr. 5, 2002). Deference to ALJ findings on credibility, however, "is not an absolute rule." Kellams, 696 F. App'x at 916. The ALJ findings must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). Accordingly, the ALJ decision "must contain specific reasons for the weight given to [plaintiff's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so [plaintiff] and any subsequent reviewer can assess how the

adjudicator evaluated the individual's symptoms." Brownrigg, 688 F. App'x at 546 (citing SSR 16-3P, 2016 WL 1119029, at *9).

Here, substantial evidence does not support the ALJ decision because he did not adequately explain why he discounted plaintiff's allegations and medical evidence of neck pain. As early as August of 2015, plaintiff began alleging significant neck pain that prevented him from working, and these complaints continued through February of 2018. Tr. 627, 653, 706, 724, 1062, 47. As a result of this pain, plaintiff persistently sought medical treatment, including consulting specialists, Tr. 701, 707, 805, 1058, 691, 1063, surgery and pain management, Tr. 47, 1114, 888, 892-893, and alternative methods of treatment, Tr. 1060. Moreover, the record contains a considerable amount of objective medical evidence supporting plaintiff's allegations. Most importantly, the medical evidence shows significant abnormalities in the cervical spine, specifically from C3 to C5. In July of 2017, an MRI revealed severe facet osteoarthritis and stenosis between C3 and C5, and a CT scan from August 8, 2017 revealed severe hypertrophic changes and narrowing at C3-4 and moderate facet degeneration and foramina compromise at C4-5. Tr. 849, 991.

The ALJ did not adequately explain why he discounted this evidence. His stated reasons for discounting plaintiff's evidence do not sufficiently address the issue of neck pain itself. The ALJ discredited the medical evidence which supported plaintiff's allegations of pain in the cervical spine by shifting the focus to other areas of the spine. For example, the ALJ acknowledged that the record contains medical evidence supporting plaintiff's allegations, noting the MRI from July of 2017 that showed that plaintiff had moderate to severe foraminal stenosis of his cervical spine. Rather than assess this evidence directly, however, the ALJ emphasized that an MRI of plaintiff's *thoracic* spine showed only mild to moderate neural foraminal stenosis. The ALJ apparently

reasoned that moderate problems in the thoracic spine discredited more severe problems in the cervical spine.

The ALJ applied the same reasoning to discount the physical examinations which supported plaintiff's allegations. After acknowledging that physical examinations "showed abnormal tenderness to palpation on the cervical spine," the ALJ emphasized that examinations of the thoracic and lumbar spine indicated no abnormalities. Id. at 31. Again, the ALJ apparently reasoned that the lack of abnormalities in the thoracic spine discredited the problems in the cervical spine. The thoracic spine and the cervical spine are two different issues. The ALJ did not explain how evaluations of the thoracic spine relate to plaintiff's allegations of pain in the cervical spine and the medical evidence supporting that pain. In other words, the ALJ left unclear why plaintiff's moderate issues in the thoracic spine discredit the severe issues which caused pain in the cervical spine. By focusing on the former, the ALJ did not clearly establish why he discounted the plaintiff's testimony and objective medical evidence supporting the latter.

The ALJ used the same logic to discount plaintiff's medical evidence showing severe abnormalities in specific parts of the cervical spine. According to the ALJ, despite plaintiff's cervical MRI showing moderate to severe foraminal stenosis between C3 and C5, "the central canal narrowing was only mild at C6-C7." Id. In other words, although plaintiff's cervical problems between C3 and C5 were severe, "it was only mild to moderate everywhere else." Id. Like his discussion regarding the thoracic spine, however, the ALJ failed to explain why lesser problems in other areas discredit the particularly severe issues between C3 and C5. Defendant justifies this faulty analysis by arguing that when the ALJ was discussing tangential issues (the C6-C7 area and the thoracic spine), he was actually just discussing the consistency of "several symptoms, *including – but not only –* cervical spine limitations and pain." Brief Of Commissioner

(Doc. #14) at 10 (emphasis in original). According to defendant, because plaintiff alleged pain throughout his entire back and several other areas throughout his body (not just his neck), "it was not unreasonable for the ALJ to consider and discuss evidence that directly related to such allegations, nor did the ALJ err by doing so." Id. at 11.

Defendant misses the point. The ALJ did not err by considering evidence that contradicted plaintiff's allegations of pain in his back and other areas of his body. The ALJ did err by using such evidence as the reason to discount allegations of pain in entirely different areas without further explanation. In other words, the ALJ decision left unclear how the evidence from C6-C7 and the thoracic spine discredits plaintiff's testimony and objective medical evidence of pain in other areas of the cervical spine. Therefore, substantial evidence does not support the ALJ finding. Accordingly, the Court remands the case for further proceedings.

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 3rd day of December, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge